1    Erica A. Maharg (Bar No. 279396)
2    Sejal Choksi-Chugh (Bar No. 222093)
     SAN FRANCISCO BAYKEEPER
3    1736 Franklin St., Suite 800
     Oakland, CA 94612
4    Telephone: (510) 735-9700
     Facsimile: (510) 735-9160
5    Email: erica@baykeeper.org
     Email: sejal@baykeeper.org
6
7    Attorneys for Plaintiff
     SAN FRANCISCO BAYKEEPER
8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                     SAN FRANCISCO DIVISION

12

13   SAN FRANCISCO BAYKEEPER, a non-profit       Civil No. 3:14-CV-5312
14   corporation,

15                          Plaintiff,           STIPULATED REQUEST FOR ENTRY OF
16              v.                               [~~PROPOSED~~] CONSENT DECREE AND
                                                 DISMISSAL; ~~PROPOSED~~ ORDER
     MARIN SANITARY SERVICE,
17                                               (Federal Water Pollution Control Act, 33
18                          Defendant.           U.S.C. § 1251 *et seq.*)

19                                               Honorable Joseph C. Spero
20

21

22

23

24

25

26

27

28

REQUEST FOR ENTRY OF [PROPOSED] CONSENT DECREE          Civil No. 3:14-CV-5312

WHEREAS, on April 30, 2015, Plaintiff San Francisco Baykeeper ("Baykeeper") notified the Court that Baykeeper and Defendant Marin Sanitary Service (collectively, the "Parties") had reached a tentative settlement in this action and had sent a copy of the [Proposed] Consent Decree to the U.S. Department of Justice and to the U.S. Environmental Protection Agency for a mandatory 45-day review period under 33 U.S.C. § 1365(c)(3) and 40 C.F.R. § 135.5, *see* Dkt. No. 15;

WHEREAS, on May 5, 2015, the Court rescheduled the Case Management Conference for July 24, 2015, *see* Dkt. No. 16.

WHEREAS, on June 16, 2015, the U.S. Department of Justice notified the Court and the Parties that it did not object to the entry of the [Proposed] Consent Decree, *see* Dkt. No. 17;

WHEREFORE, the Parties hereby stipulate and request that the Court approve and enter the [Proposed] Consent Decree as an Order of the Court, order that the above-captioned action against Defendant be dismissed with prejudice, and retain jurisdiction over the Parties for the sole purpose of enforcing compliance by the Parties with the terms of the Consent Decree until the Consent Decree terminates;

WHEREFORE, the Parties hereby stipulate and request that the Court vacate the Case Management Conference scheduled for July 24, 2015 and all other deadlines in this matter.

WHEREFORE, the Parties respectfully stipulate and request the Court to approve and enter the [Proposed] Order attached hereto.

DATE: June 23, 2015

Respectfully Submitted,

SAN FRANCISCO BAYKEEPER

/s/ Erica A. Maharg
—————————————————————
Erica A. Maharg
Attorneys for Plaintiff
SAN FRANCISCO BAYKEEPER

1    DATE: June 23, 2015              BRADY & VINDING

2

3                              /s/ Michael V. Brady

4                              Michael V. Brady
                                 Attorneys for Defendant
5                              MARIN SANITARY SERVICE

1

[~~PROPOSED~~] ORDER

IT IS HEREBY ORDERED that the [~~Proposed~~] Consent Decree, attached hereto as Exhibit A, is fully incorporated herein by reference and is entered as an Order of the Court.

IT IS FURTHER ORDERED that the above-captioned action against Defendant is dismissed with prejudice.

IT IS FURTHER ORDERED that the Court shall retain jurisdiction over the Parties for the sole purpose of enforcing compliance by the Plaintiff and Defendant with the terms of the Consent Decree until the Consent Decree terminates.

IT IS FURTHER ORDERED that the Case Management Conference scheduled for July 24, 2015 at 2:00 PM and all other deadlines in this matter are vacated.

IT IS SO ORDERED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA



Date: _____June 24, 2015_____        _____

Honorable

REQUEST FOR ENTRY OF [PROPOSED] CONSENT DECREE        Civil No. 3:14-CV-5312

# EXHIBIT A

SEJAL CHOKSI-CHUGH (Bar No. 222093)
ERICA MAHARG (Bar No. 279396)
SAN FRANCISCO BAYKEEPER
1736 Franklin Street, Suite 800
Oakland, California 94612
Telephone: (510) 735-9700
Facsimile: (510) 735-9160
Email: sejal@baykeeper.org
Email: erica@baykeeper.org

Attorneys for Plaintiff
SAN FRANCISCO BAYKEEPER

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER, a California non-profit corporation,<br><br>           Plaintiff,<br><br>      v.<br><br>MARIN SANITARY SERVICE, a California corporation,<br><br>           Defendant. | Case No.: 3:14-cv-05312<br><br>**[PROPOSED] CONSENT DECREE**<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*)** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### CONSENT DECREE

WHEREAS, San Francisco Baykeeper, Inc. ("Baykeeper") is a non-profit public benefit corporation dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of the San Francisco Bay and other area waters;

WHEREAS, Marin Sanitary Service ("MSS") operates a recycling center, resource recovery center, and household hazardous waste facility, located at 1050 Andersen Drive in San Rafael, California (the "Facility").  (Baykeeper and MSS are collectively referred to herein as the "Parties");

WHEREAS, stormwater discharges associated with industrial activity at the Facility are regulated pursuant to the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 92-12-DWQ (as amended by Water Quality Order 97-03-DWQ), issued pursuant to Section 402 of the Federal Water Pollution Control Act, 33 U.S.C. §1342 (hereinafter "Industrial Stormwater Permit").  These industrial activities include, *inter alia*, the collection and processing of residential and commercial recyclables, the transportation of materials on and off site, storage of recyclables, construction, and waste materials, truck and equipment operation, and other industrial activities;

WHEREAS, the Industrial Stormwater Permit includes the following requirements for all permittees, including MSS: 1) develop and implement a stormwater pollution prevention plan ("SWPPP"), 2) control pollutant discharges using, as appropriate, best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants, 3) implement BAT and BCT through the development and application of Best Management Practices ("BMPs"), which must be included and updated in the SWPPP, and, 4) when necessary, implement additional BMPs to prevent or reduce any pollutants that are causing or contributing to any exceedance of water quality standards;

WHEREAS, on June 2, 2014, Baykeeper served, *inter alia*, MSS, the Administrator of EPA Region IX, the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Officer of the Regional Board, the U.S. Attorney General, and the Administrator of the EPA with a notice of intent to file suit ("60-Day Notice") under Sections 505(a)(1) and (f) of the Federal

Water Pollution Control Act ("Clean Water Act" or "the Act"), 33 U.S.C. § 1365(b)(1)(A), alleging violations of the Act and the Industrial Stormwater Permit at the Facility;

WHEREAS, on December 3, 2014, Baykeeper filed a complaint ("Complaint") alleging certain violations of the Act and the Industrial Stormwater Permit at the Facility;

WHEREAS, MSS denies all allegations and claims contained in the Complaint and reserves all rights and defenses with respect to such allegations and claims;

WHEREAS, the Parties believe it is in their mutual interest and choose to resolve in full Baykeeper's allegations in the 60-Day Notice and Complaint through settlement and avoid the cost and uncertainties of further litigation;

NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES, AND ORDERED AND DECREED BY THE COURT, AS FOLLOWS:

## I.   BEST MANAGEMENT PRACTICES

1.   In order to further reduce or further prevent pollutants associated with industrial activity from discharging via stormwater to the waters of the United States, MSS shall implement additional appropriate structural and non-structural Best Management Practices ("BMPs") to, at a minimum, comply with Effluent Limitation B(3) and Receiving Water Limitation C(2) of the Industrial Stormwater Permit, as described more fully below.

2.   **Site Map**:  Within thirty (30) days of the Effective Date, MSS shall update the Site Map included in the Facility SWPPP.  The Site Map shall clearly denote the topography and the direction of stormwater flow for each drainage area of the Facility.  The Site Map shall identify the five drainage areas, as depicted on Exhibit 1.  The Site Map shall also identify property boundaries, known or suspected drop inlets, ground type (pervious or impervious), berms and the materials they are composed of, any permanent structures and features, discharge points, and all other physical structures or items relevant under the Industrial Stormwater Permit and in this Consent Decree.

3.   **Designation and Protocol for All Sampling Locations**:  Within thirty (30) days of the Effective Date, MSS shall update the Facility SWPPP to fully describe any modifications to the discharge or sampling locations, as shown on the Site Map and described in the existing SWPPP ("Designated Stormwater Management Points").  While the Consent Decree is in effect, if MSS makes any changes to

the sampling locations or Designated Discharge Points at the Facility, MSS shall update the SWPPP within forty-five (45) days and submit the revised SWPPP to Baykeeper, consistent with the requirements of Paragraph 8, below.

4.     **Non-Structural Best Management Practices.**  Beginning on the Effective Date, MSS shall implement the following non-structural BMPs:

a.     **Storm Drain Inlet/Catch Basin Best Management Practices**:

i.     Storm Drain Inlet/Designated Discharge Point Inspections:  Within thirty (30) days of the Effective Date and between September 1 and October 1 of each subsequent year, MSS shall inspect any storm drain inlets, catch basins, Designated Discharge Points, filtration/treatment devices, and other BMPs in place at the Facility.  MSS shall promptly clean, as needed, each drain inlet, catch basin, Designated Discharge Point, filtration/treatment device, and other BMPs in order to remove any accumulated dust, sediment, solids, or debris.

ii.     Storm Drain Inlet/Designated Discharge Point Maintenance and Cleaning:  On a weekly basis between October 1 to May 30 of each year ("Wet Season"), MSS shall inspect all storm drain inlets, catch basins, Designated Discharge Points, filtration/treatment devices, and other BMPs in place at the Facility to ensure that they are not in a condition that would materially impair their efficacy, and clean out accessible deposited sediment or debris.  MSS shall properly dispose of any dust, sediment, debris, or other removed pollutants.

iii.     Log of Storm Drain Inlet/Designated Discharge Point Inspections, Maintenance and Cleaning:  MSS shall prepare and maintain a log of the Storm Drain Inlet/Designated Discharge Point Inspections, Maintenance and Cleaning described herein ("Maintenance Log").  The Maintenance Log shall indicate the staff who completed the maintenance activity and when it was completed.  The Maintenance Log shall be made available for inspection by Baykeeper at any site inspection or otherwise within three (3) business days advance request by Baykeeper.

b.     **Site Sweeping**:  MSS shall mechanically sweep the accessible paved areas of the Facility and shall also sweep non-accessible areas by hand or vacuum at least two (2) times per day during the Wet Season and at least one (1) time per day during the remaining portion of the year ("Dry Season") on each day that MSS is actively operating.  MSS shall keep a log or checklist, as appropriate, of the on-site

sweeping activity performed ("Sweeping Log"), and shall direct employees and/or contractors to accurately complete the Sweeping Log. The Sweeping Log shall indicate the employee or contractor who conducted the sweeping, the location of the sweeping, and the dates the sweeping activities occurred. The Sweeping Log shall be made available for inspection by Baykeeper at any site inspection or within three (3) business days of a request by Baykeeper.

c. **Abandoned or Inutile Equipment Storage and Removal**: MSS shall either store under cover or remove from the Facility all abandoned or broken equipment or materials no longer considered for future use that have the potential to serve as the source for pollutant loading.

d. **Vehicle and Equipment Management**: MSS shall continue to implement BMPs to reduce or minimize pollutant release from equipment such as forklifts, hydraulic lifts, trucks, and other heavy equipment that are parked or stored in areas of the Facility from which stormwater discharges. Such BMPs shall include relocating the vehicles offsite to better facilitate sweeping of paved areas, placing drip pans under equipment stored or parked for a week or longer, weekly inspections for evidence of leaks from such equipment, and prompt clean-up of spills, drips, or leaks from such equipment. Any spilled substances and absorbent materials used in cleaning up spills shall be disposed of in accordance with all local, state, and federal laws and regulations.

e. **Vehicle and Equipment Maintenance**: MSS shall not conduct routine (*i.e.*, non-emergency) vehicle or movable equipment maintenance or repair at the Facility in outdoor, uncovered areas from which stormwater discharges during rainfall events.

f. **Training**: Beginning on the Effective Date, and annually thereafter, and within thirty (30) days of hiring of new employees, MSS shall conduct training for all appropriate employees to explain the requirements of the Facility's SWPPP to the extent applicable to such employee. Training shall focus on the employee's role in implementing various stormwater control measures including, for example, implementation of BMPs, sweeping, vehicle maintenance, or facility inspections. Training shall be conducted bilingually (*i.e.,* Spanish/English or other pertinent language) to the extent that such employee is not reasonably able to comprehend training in English. If and when appropriate, MSS shall integrate any new training requirements resulting from this Consent Decree into the Facility SWPPP.

MSS shall also update the SWPPP, if and when appropriate, to identify the positions responsible for carrying out stormwater management, monitoring, sampling, and SWPPP implementation.

5. **Structural Best Management Practices**: MSS shall develop and implement the following structural BMPs:

    a. **Drainage Area #1**

        i. <u>Hydrodynamic Separator</u>**:** Within ninety (90) days of the Effective Date, MSS shall fully install a hydrodynamic separator system, which is agreed upon by both Parties, at Monitoring Station A, as depicted on Exhibit 1 ("MS-A"). The hydrodynamic separator shall maintain a capacity sufficient to accept the flow rate of runoff produced from a rainfall intensity of at least 0.2 inches per hour, as modeled over the entire Drainage Area #1. If MSS is unable to complete the installation within the allotted time it will notify Baykeeper of the circumstances causing the delay. Notwithstanding the foregoing, the installation must be completed by October 1, 2015.

        ii. <u>Recyclables Handling and Storage Area Coverage</u>**:** Prior to and during any forecasted rain event, MSS shall fully cover all recyclables in this area. All recyclables shall be shipped offsite within fifteen (15) days of arrival. Once MSS's Municipal Utility Permit is effective, MSS shall consider providing a permanent cover for the Recyclables Handling and Storage Area.

    b. **Drainage Area #2**

        i. <u>Hydrodynamic Separator</u>: Within ninety (90) days of the Effective Date, MSS shall fully install a hydrodynamic separator system, which is agreed upon by both Parties, at Monitoring Station B, as depicted on Exhibit 1 ("MS-B"). The hydrodynamic separator shall maintain a capacity sufficient to accept the flow rate of runoff produced from a rainfall intensity of at least 0.2 inches per hour, as modeled over the entire Drainage Area #2. If MSS is unable to complete the installation within the allotted time it will notify Baykeeper of the circumstances causing the delay. Notwithstanding the foregoing, the installation must be completed by October 1, 2015.

        ii. <u>Straw Wattles</u>: MSS shall place bales of hay and/or straw wattles around all drain inlets in Drainage Area #2. Should these prove ineffective, MSS shall include installation of recessed sediment traps around all drain inlets in Drainage Area #2 as part of an Action Plan prepared pursuant to Paragraph 15.

c.    **Drainage Area #3 Hydrodynamic Separator:**  Within ninety (90) days of the Effective Date, MSS shall fully install a hydrodynamic separator system, which is agreed upon by both Parties, at Monitoring Station C, as depicted on Exhibit 1 ("MS-C").  The hydrodynamic separator shall maintain a capacity sufficient to accept the flow rate of runoff produced from a rainfall intensity of at least 0.2 inches per hour, as modeled over the entire Drainage Area #3.  If MSS is unable to complete the installation within the allotted time it will notify Baykeeper of the circumstances causing the delay. Notwithstanding the foregoing, the installation must be completed by October 1, 2015.

d.    **Stockpile Management:**  MSS shall implement the following BMPs for the stockpiles located at the Facility:

i.    Dirt/Soil Stockpile Coverage:  As of the Effective Date, MSS shall fully cover the stockpiles of dirt and/or soil located at the Facility at all times, except when it is necessary to remove the cover in the event of sale.  After a sale event, MSS shall immediately recover the stockpile.

ii.    Concrete Stockpile Management:  As of the Effective Date, MSS shall place straw bales surrounding any stockpile of concrete at the Facility twenty-four (24) hours prior to and during any forecasted rain event.  If rain is forecasted over night or during non-business hours, MSS shall place the straw bales surrounding the concrete stockpiles prior to the close of business.  Should straw bales prove ineffective, MSS shall consider full coverage of concrete stockpiles as part of any Action Plan prepare pursuant to Paragraph 15.

6.    **Drainage Areas #4 and #5**

a.    To the extent MSS is not conducting any industrial activities in Drainage Areas #4 and #5, as depicted on Exhibit 1, MSS has no obligations at this time to develop, install, or implement BMPs for those areas.

b.    If MSS begins conducting any industrial activities in Drainage Areas #4 and #5, MSS shall notify Baykeeper and amend the SWPPP to include BMPs to control pollutant discharges from these drainage areas using BAT or BCT, within ten (10) business days of commencing such industrial activities.  Baykeeper shall have a right to comment on and propose changes to the amended SWPPP in accordance with Paragraph 8, below.  MSS shall also sample, monitor, inspect and report stormwater discharges from Drainage Areas #4 and #5, in accordance with Section II, below.

CONSENT DECREE                                                              Case No.   3:14-cv-05312

7.    **Maintenance of BMP Structural Controls**:  Beginning on the Effective Date, MSS shall maintain all structural BMPs at the Facility in good operating condition and shall promptly repair any damaged or degraded structural BMPs.

8.    **Amendment of SWPPP**:  Within thirty (30) days of the Effective Date, MSS shall amend the Facility SWPPP to incorporate the requirements and BMPs set forth in this Section I and thereafter submit the updated SWPPP to Baykeeper within ten (10) business days.  Baykeeper shall have thirty (30) days from receipt of the amended SWPPP to propose any changes to the SWPPP.  Within thirty (30) days of notification by Baykeeper of any proposed changes to the SWPPP, MSS shall make all of Baykeeper's changes to the amended SWPPP unless MSS timely requests a meet and confer in accordance with Paragraph 27 to discuss any concerns.  Compliance with the SWPPP, as amended in accordance with this Paragraph provision, shall at all times be a requirement of this Consent Decree.

9.    **Additional BMPs:**  The BMPs included in this Section constitute a preliminary approach to stormwater management at the Facility for the first year of the agreement.  If, after implementing these BMPs, the sampling conducted in accordance with Section II indicates that the Facility's stormwater discharges continue to exceed the Target Levels in Exhibit 2, or otherwise do not meet water quality standards, MSS shall propose additional treatment as part of any Action Plan prepared in accordance with Paragraph 15.  Additional treatment shall be incorporated at the point of the vault-based hydrodynamic separators, which shall serve as a pre-treatment step.  The agreed-upon system shall be designed to treat, at a minimum, the flow rate of runoff produced from a rainfall intensity of at least 0.2 inches per hour through the use of media selected specifically for the pollutants of interest.  Prior to installation, Baykeeper shall be provided the opportunity to review and comment on the proposed treatment solution consistent with Action Plan review under Paragraph 17.

## II.    SAMPLING, MONITORING, INSPECTION & REPORTING

10.   **Designated Discharge Points:**  For purposes of this Consent Decree, the discharge points, identified in Exhibit 1 and labeled "MS-A," "MS-B," and "MS-C," shall be the "Designated Discharge Points."

11.   **Sampling Program - Stormwater**:  Beginning with the 2015-2016 Wet Season, subject to the limitations set forth below, MSS shall collect and analyze stormwater samples from all of its Designated Discharge Points according to the following sampling schedule:

a.      During each Wet Season starting with the 2015-2016 Wet Season, MSS shall collect and analyze samples from all Designated Discharge Points during the first four (4) storm events of the Wet Season, as qualified in the Industrial Stormwater Permit, except that MSS can collect and analyze stormwater discharges after the first hour of discharge during scheduled operating hours and samples can be collected during any storm event that is preceded by a 24-hour dry period.  Each stormwater sample must be analyzed for the presence of each of the parameters listed on the Sampling Chart attached hereto as Exhibit 2.

b.      If MSS is unable to take a sample from any of the Designated Discharge Points during any of the first four storm events of the Wet Season, MSS shall continue to sample from any subsequent storm events until four samples have been collected from each Designated Discharge Point in that Wet Season.

c.      In the event that MSS is unable to collect four samples from each Designated Discharge Point in a Wet Season, MSS shall explain in writing in the End-of-Season Summary under Paragraph 14 why it was unable to collect the required sample(s).

d.      Should industrial processes materially change at the Facility, MSS shall conduct sampling for any additional toxic priority pollutants listed in 40 C.F.R. § 131.38 likely to be present in the Facility's stormwater discharges in significant quantities as a result of the changed industrial processes.  MSS shall notify Baykeeper of any such changes within thirty (30) days of such a change.

12.   **Certified Lab**:  Except for pH samples, which will be measured with an on-site calibrated pH meter in order to meet the 15 minute holding time requirement, MSS shall have all stormwater samples collected pursuant to this Consent Decree delivered to a California state certified environmental laboratory within the time needed for analysis within laboratory method allowable hold times.  The laboratory shall thereafter conduct analysis sufficient to detect individual constituents at or below the levels set forth in the attached Exhibit 2.

13.   **Sample Result Reporting**:  After the Effective Date, MSS shall provide complete results from sampling and analysis to Baykeeper within ten (10) business days of receipt of the laboratory report from each sampling event.

14.   **End-of-Season Summary**:  By July 15 following each Wet Season that occurs during the Consent Decree, MSS shall prepare and send to Baykeeper an End-of-Season Summary that includes (1) a summary chart with all of the sample results from the previous Wet Season including the constituent concentration(s) from Designated Discharge Point sample(s) collected at the Facility exceeding the Target Levels in Exhibit 2 ("Exceedance(s)"); and (2) identification of any new BMP(s) that MSS has implemented or will implement not already discussed in a prior Mid-Season BMP Analysis Report, End-of-Season Summary or Action Plan for the immediately prior Wet Season.

15.   **Action Plan**:  If any stormwater sample result during a Wet Season exceeds any Target Level set forth in Exhibit 2, MSS shall submit an Action Plan in addition to an End-of-Season Summary by July 15.

16.   **Contents of Action Plan**:  If an Action Plan is required, it shall include the following:

a.      The possible sources of the Exceedance(s) during the applicable Wet Season;

b.      A proposal for and evaluation of new site-specific BMPs designed to reduce pollutants in future stormwater discharges to the Target Levels in Exhibit 2 or to achieve BAT and BCT and are designed to achieve applicable water quality standards for those constituents including the specific proposals for advanced treatment; and

c.      A schedule to implement any revised and/or additional BMPs by the earliest practicable time, and no later than October 1 of the next Wet Season.  In any Action Plan, MSS shall consider appropriate structural BMPs as necessary to adequately address its Exceedances.

17.   **Baykeeper Review of Action Plan**:  Baykeeper shall have thirty (30) days from receipt to propose revisions to the Action Plan.  Within thirty (30) days of receiving Baykeeper's proposed revisions, MSS shall consider each of Baykeeper's recommended revisions to the Action Plan and accept them or timely request, in accordance with Paragraph 27, a meet and confer to discuss.

18.   **Implementation of Action Plan**:  MSS shall implement the Action Plan(s) adopted pursuant to this Consent Decree as an obligation of this Consent Decree.

19.    Within thirty (30) days after BMPs set forth in an Action Plan pursuant to this Consent Decree are implemented, MSS shall amend the Facility SWPPP to include all BMP revisions or additions not otherwise already implemented and included in the SWPPP.  Within thirty (30) days thereafter, MSS shall provide Baykeeper with a copy of such revised SWPPP.

20.    During each Wet Season, MSS has an ongoing obligation to evaluate the BMPs implemented at the Facility and included in this Consent Decree and any current or previous Action Plans, and, if MSS has exceeded Target Levels, make attempts to reduce the concentrations to Target Levels or otherwise meet BAT or BCT, as appropriate, for the remainder of the Wet Season.  MSS shall use the results from subsequent stormwater samples as they become available to assist with their ongoing evaluation of the effectiveness of BMPs.

21.    **Stipulated Payments:** MSS shall pay the following stipulated payments during the Term of this Consent Decree, unless Baykeeper, at its sole discretion, finds that MSS's failure was reasonable.

a.    $500 for each failure to collect a sample required under this Consent Decree;

b.    $500 per day after the report due date for each failure to timely submit any document, report or other communication required in this Consent Decree; and

c.    $500 per day payment for every business day (Monday through Friday, excluding state and federal holidays) past the due date that MSS fails to submit any payments due under Paragraphs 24-26 of this Consent Decree.

d.    Any stipulated payments described above shall be paid to Baykeeper within 30 days of notification of the failure to comply.

22.    **Site Access**:  During the Term of this Consent Decree, MSS shall permit representatives of Baykeeper to perform up to two (2) physical inspections per year of the Facility during normal operating hours - Monday to Friday ("Site Inspection").  Baykeeper shall provide MSS twenty-four (24) hours' notice in advance of such Site Inspections.  Baykeeper shall comply with all safety instructions provided to Baykeeper by MSS staff during all Site Inspections.  During Site Inspections, Baykeeper shall be allowed to inspect and sample any stormwater discharges, logs, and take photos and/or videos.

23.    **Reports**:  During the Term of this Consent Decree, MSS shall provide Baykeeper with a copy of all documents required to be submitted to the Regional Water Board or the State Water Board

concerning the Facility's compliance with the Industrial Stormwater Permit.  Such documents and reports shall be transmitted to Baykeeper via electronic mail at the time the documents are submitted to the Regional Water Board or State Water Board.

## III.      MITIGATION, FEES AND COSTS

24.     **Environmental Mitigation Funding**:  As mitigation for the alleged violations set forth in Baykeeper's Notice and Complaint, within thirty (30) days of the Effective Date, MSS shall pay the sum of fifteen thousand dollars ($ 15,000) to The Watershed Project, an environmental non-profit organization, for projects that will benefit the San Francisco Bay watershed.  The Watershed Project reports the grant funding made with the tendered funds to the Court, U.S. Department of Justice, and the Parties, setting forth the recipient and purpose of the funds.  Payment shall be made to The Watershed Project, 1327 South 46th Street, 155 Richmond Field Station, Richmond, CA 94804, within thirty (30) days of the Effective Date, with notice to Baykeeper.

25.     **Reimbursement of Fees and Costs**:  MSS shall reimburse Baykeeper in the amount of thirty thousand two hundred fifty dollars ($ 30,250) to help cover Baykeeper's reasonable investigation, expert, and attorneys' fees and costs, and all other reasonable costs incurred as a result of investigating the activities at the Facility related to this Consent Decree, bringing these matters to MSS's attention, and negotiating a resolution of this action.  MSS shall tender said payment, payable to Baykeeper, within thirty (30) days of the Effective Date.

26.     **Compliance Monitoring Funds:**  MSS shall provide to Baykeeper a total of four thousand dollars ($ 4,000) annually for costs and fees associated with monitoring MSS's compliance with this Consent Decree through the termination date of this agreement, or twelve thousand dollars ($12,000) total.  The total compliance monitoring fund payment shall be made payable to Baykeeper within thirty (30) days after the Effective Date.

27.     **Dispute Resolution**: If a dispute under this Consent Decree arises, or the Parties believe that a breach of this Consent Decree has occurred, the Parties shall schedule a meet and confer within ten (10) business days of receiving written notification from the other Party of a request for a meeting to determine whether a violation of this Consent Decree has occurred and to develop a mutually agreed upon plan, including implementation dates, to resolve the dispute.  If the Parties fail to meet and confer

or the meet and confer does not resolve the issue, after at least seven (7) business days have passed after the meet and confer occurred or should have occurred, either Party shall be entitled to all rights and remedies under the law, including bringing a motion before the United States District Court for the Northern District of California for the limited purpose of enforcing the terms of this Consent Decree. The Parties shall be entitled to seek fees and costs incurred in any such action pursuant to the provisions set forth in the Section 505(d) of the Clean Water Act, 33 U.S.C. §1365(d), and applicable case law interpreting such provisions.

## IV.   JURISDICTION OVER PARTIES AND SUBJECT MATTER OF CONSENT DECREE

28.   **Jurisdiction:**  For the purposes of this Consent Decree, the Parties stipulate that the United States District Court of California, Northern District of California, has jurisdiction over the Parties and subject matter of this Consent Decree.  The Parties stipulate that venue is appropriate in the Northern District of California and that MSS will not raise in the future as part of enforcement of this Consent Decree whether Baykeeper has standing to bring the Complaint or any subsequent action or motion pursuant to the Dispute Resolution procedures herein.  MSS reserves all other rights and defenses in any such proceeding.

29.   **Jurisdiction to Enforce Consent Decree:**  The Court referenced above shall retain jurisdiction over the Parties and subject matter of this Consent Decree for the purpose of adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree.  The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies.

30.   **Submission of Consent Decree to DOJ:**  Within three (3) business days of receiving all of the Parties' signatures to this Consent Decree, Baykeeper shall submit this Consent Decree to the U.S. Department of Justice ("DOJ") and EPA for agency review consistent with 40 C.F.R. §135.5.  The agency review period expires forty-five (45) calendar days after receipt by the DOJ, evidenced by correspondence from DOJ establishing the review period.  In the event DOJ comments negatively on the provisions of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issues raised by DOJ.

## V.   WAIVER AND RELEASES

CONSENT DECREE                                              Case No.   3:14-cv-05312

31.   **Baykeeper Waiver and Release of Noticed Parties**:  Baykeeper, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors and assigns releases MSS, its officers, directors, employees, members, parents, subsidiaries, affiliates, successors or assigns, agents, attorneys and other representatives from and waives all claims raised in the 60-Day Notice and/or the Complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed or which could have been claimed for matters included in the 60-Day Notice and/or the Complaint.

32.   **MSS's Waiver and Release of Baykeeper**:  MSS, on its own behalf and on behalf of its officers, directors, employees, members, parents, subsidiaries, affiliates, or their successors or assigns release Baykeeper and its officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns from, and waive all claims which arise from or pertain to, the 60-Day Notice and/or the Complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed for matters included in the 60-Day Notice and/or the Complaint.

## VI.   MISCELLANEOUS PROVISIONS

33.   **Effective Date**:  The Effective Date of this Consent Decree shall be the last day for the U.S. Department of Justice to provide comment on this Consent Decree, i.e., the 45th day following the U.S. Department of Justice's receipt of the Consent Decree.

34.   **Term of Consent Decree**:  This Consent Decree shall continue in effect until September 30, 2017 (the "Term"), at which time the Consent Decree, and all obligations under it, shall automatically terminate.  Notwithstanding the foregoing, all waivers and releases contained in Paragraphs 31-32 of this Consent Decree shall survive the termination of this Consent Decree.

35.   **Early Termination**:  If MSS should cease industrial operations at the site and file a Notice of Termination ("NOT") under the Industrial Stormwater Permit prior to the termination date of this Consent Decree, MSS shall send Baykeeper a copy of the proposed NOT concurrent with its submittal to the Water Board.  Within ten (10) days of the Water Board's approval of the NOT, MSS shall notify Baykeeper in writing of the approval and remit all outstanding payments, including stipulated payments, to Baykeeper.  In the event a new successor or assign continues industrial operations at the site and

assumes responsibility for implementation of this agreement pursuant to Paragraph 46, MSS shall notify Baykeeper within ten (10) days of the transition.

36.  **Execution in Counterparts**:  The Consent Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

37.  **Signatures**:  The Parties' signatures to this Consent Decree transmitted by facsimile or electronic mail transmission shall be deemed binding.

38.  **Construction**:  The language in all parts of this Consent Decree, unless otherwise stated, shall be construed according to its plain and ordinary meaning.  The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

39.  **Authority to Sign**:  The undersigned are authorized to execute this Consent Decree on behalf of their respective Party and have read, understood and agreed to all of the terms and conditions of this Consent Decree.

40.  **Integrated Consent Decree**:  All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Consent Decree are contained herein.

41.  **Severability**:  In the event that any of the provisions of this Consent Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

42.  **Choice of Law**:  This Consent Decree shall be governed by the laws of the United States or, where applicable, the laws of the State of California.

43.  **Full Settlement**:  This Consent Decree constitutes a full and final settlement of this matter.

44.  **Negotiated Agreement**:  The Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

45.  **Modification of the Agreement**: This Consent Decree, and any provisions herein, may not be changed, waived, or discharged unless by a written instrument signed by each of the Parties.

46.  **Assignment**:  Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns.

47. **Mailing of Documents to Baykeeper/Notices/Correspondence**: Any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to Baykeeper pursuant to this Consent Decree shall be, to the extent feasible, sent via electronic mail transmission to the e-mail addresses listed below or, if electronic mail transmission is not feasible, via certified U.S. Mail with return receipt, or by hand delivery to the following address:

> San Francisco Baykeeper
> Attention: Nicole Sasaki
> 1736 Franklin St. Suite 800
> Oakland, CA 94612
> E-mail:  nicole@baykeeper.org

Unless requested otherwise by MSS, any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to MSS pursuant to this Consent Decree shall, to the extent feasible, be provided by electronic mail transmission to the e-mail addresses listed below, or, if electronic mail transmission is not feasible, by certified U.S. Mail with return receipt, or by hand delivery to the addresses below:

> Marin Sanitary Service
> Attention: Patty Garbarino and Ron Piombo
> 1050 Andersen Drive
> San Rafael, CA 94901
> Email: patty.garbarino@marinsanitary.com, ron.piombo@marinsanitary.com

> With a copy sent to:

> Michael V. Brady
> Brady & Vinding
> 400 Capitol Mall, Suite 2640
> Sacramento, CA 95814
> Email: mbrady@bradyvinding.com

Notifications of communications shall be deemed submitted on the date that they are emailed, or postmarked and sent by first-class mail or deposited with an overnight mail/delivery service. Any changes of address or addressees shall be communicated in the manner described above for giving notices.

48. **Impossibility of Performance**: No Party shall be considered to be in default in the performance of any of its obligations under this Consent Decree when performance becomes impossible due to

circumstances beyond the Party's control, including without limitation any act of God, act of war or terrorism, fire, earthquake, and flood. "Circumstances beyond the Party's control" shall not include normal inclement weather, economic hardship, or inability to pay. Any Party seeking to rely upon this Paragraph shall have the burden of establishing that it could not reasonably have been expected to avoid, and which by exercise of due diligence has been unable to overcome, the impossibility of performance.

The settling Parties hereto enter into this Consent Decree, Order and Final Judgment and submit it to the Court for its approval and entry as a final judgment.

SAN FRANCISCO BAYKEEPER

Date: April 30, 2015

ERICA A. MAHARG
Staff Attorney

MARIN SANITARY SERVICE

Date:

_____

PATTY GARBARINO
President

APPROVED AND SO ORDERED, this ___ day of _____.

UNITED STATES DISTRICT JUDGE

_____

CONSENT DECREE                                                    Case No.   3:14-cv-05312

circumstances beyond the Party's control, including without limitation any act of God, act of war or terrorism, fire, earthquake, and flood. "Circumstances beyond the Party's control" shall not include normal inclement weather, economic hardship, or inability to pay. Any Party seeking to rely upon this Paragraph shall have the burden of establishing that it could not reasonably have been expected to avoid, and which by exercise of due diligence has been unable to overcome, the impossibility of performance.

The settling Parties hereto enter into this Consent Decree, Order and Final Judgment and submit it to the Court for its approval and entry as a final judgment.

SAN FRANCISCO BAYKEEPER

Date:



ERICA A. MAHARG
Staff Attorney


MARIN SANITARY SERVICE

Date: April 30, 2015



PATTY GARBARINO
President



APPROVED AND SO ORDERED, this 24th day of _____ June _____.

MAGISTRATE
UNITED STATES ~~DISTRICT~~ JUDGE

Judge Joseph C. Spero

CONSENT DECREE                                    Case No.   3:14-cv-05312

EXHIBIT 1



MS-A

MS-B

1

Recyclables
Handling and
Storage Area

MS-C

2

3

4

5

Monitoring Station

Non-Industrial Area

N

Feet
0    125    250    500

VESTRA

SOURCE: MICROSOFT 2010 AERIAL PHOTOGRAPH; MARIN COUNTY 2014

P:\GIS\71412\71412_Exhibit1.mxd

EXHIBIT 1
MARIN SANITARY SERVICE
SAN RAFAEL, CALIFORNIA

EXHIBIT 2

# EXHIBIT 2

### Target Levels for Stormwater Sampling

| Constituent | Target Levels | Source |
|---|---|---|
| **pH** | 6.0 – 9.0 SU | *Multi-Sector General Permit 2000 benchmark; California Industrial General Permit 2014-0057-DWQ* |
| **Total Suspended Solids** | 100 mg/L | *Multi-Sector General Permit 2008 Sector-specific benchmark; California Industrial General Permit 2014-0057-DWQ* |
| **Oil and Grease** | 15 mg/L | *Multi-Sector General Permit 2000 benchmark; California Industrial General Permit 2014-0057-DWQ* |
| **Chemical Oxygen Demand** | 120 mg/L | *Multi-Sector General Permit 2008 Sector-specific benchmark; California Industrial General Permit 2014-0057-DWQ* |
| **Total Aluminum** | 0.75 mg/L | *Multi-Sector General Permit 2008 Sector-specific benchmark; California Industrial General Permit 2014-0057-DWQ* |
| **Dissolved Copper** | 0.0094 mg/L | *San Francisco Bay Basin Plan Water Quality Objective* |
| **Total Copper** | 0.0332 mg/L | *California Industrial General Permit 2014-0057-DWQ* |
| **Total Iron** | 1.0 mg/L | *Multi-Sector General Permit 2008 Sector-specific benchmark; California Industrial General Permit 2014-0057-DWQ* |
| **Dissolved Zinc** | 0.09 mg/L | *San Francisco Bay Basin Plan Water Quality Objective* |
| **Total Zinc** | 0.26 mg/L | *California Industrial General Permit 2014-0057-DWQ* |